UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LINDA NEVILLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:21 CV 297 RWS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant.[1] ) | |

## MEMORANDUM AND ORDER

Plaintiff Linda Nevills ("Nevills") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's ("Commissioner") decision to deny her application for disability insurance benefits. I will affirm the decision for the reasons explained below.

## PROCEDURAL HISTORY

Nevills filed a Title II application for disability insurance benefits on April 30, 2018. The claims were denied and Nevills timely filed a request for a hearing. The ALJ issued a favorable decision on November 18, 2019, finding that Nevills

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

was entitled to benefits. On January 16, 2020, the Appeals Council reviewed the case and concluded that the ALJ's decision was not supported by substantial evidence and contained errors of law. The Appeals Council found that the ALJ erred by failing to identify and explain a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (Tr. 223-24.) The vocational expert testified that an individual with Nevills's limitations could not perform any work in the national economy; however, according to the Appeals Council, the DOT contains "numerous jobs performable under the assessed [RFC] for work at all exertional levels" with the limitations that the ALJ imposed. (Tr. 223.) Additionally, the Appeals Council found that the ALJ did not provide "sufficient rationale to support the finding that [Nevills] can only occasionally handle and finger with both upper extremities." (Tr. 224.) As a result, the Appeals Council remanded the case for a new hearing.

After holding another hearing, the same ALJ issued an unfavorable decision dated August 4, 2020. Nevills appealed and the Appeals Council denied her request for review. She then filed this case seeking judicial review of the Commissioner's decision. She argues that the ALJ did not properly evaluate the medical opinion evidence in the record.

## LEGAL STANDARD

To be eligible for disability insurance benefits under the Social Security Act,

2

a plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner conducts a five-step analysis. See 20 C.F.R. § 404.1520; Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the disability analysis proceeds to the next step. At this step, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled and the analysis ends. If the claimant has a severe impairment, the Commissioner then determines whether the

impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If the claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  If the impairment is not equivalent to a listed impairment, then the Commissioner proceeds to the fourth step to determine whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  If not, at the last step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the national economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  See, e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering a claimant's subjective complaints, the ALJ is required to consider whether the complaints are consistent with the medical evidence.  See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and

side effects of medication, and functional restrictions).[2]  When an ALJ gives good reasons for the findings, the court will usually defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

In reviewing an ALJ's denial of Social Security disability benefits, my role is limited to determining whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence on the record as a whole.  Pate-Fires, 564 F.3d at 942.  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Id.  In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision.  Id.  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those

---

[2] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

5

positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

## ADMINISTRATIVE RECORD

With respect to the medical records and other evidence of record, I adopt Nevills's recitation of facts set forth in her Statement of Uncontroverted Material Facts, to the extent that they do not directly conflict with the Commissioner's Statement of Uncontroverted Material Facts and are supported by the record. Specific facts will be discussed as needed to address the parties' arguments.

## HEARINGS BEFORE THE ALJ

Nevills was 51 years old at her first hearing on November 4, 2019. The hearing began with testimony from Dr. Joseph Gaeta, an impartial medical expert who reviewed Nevills's medical records. Dr. Gaeta testified that Nevills had dyshidrotic eczema, which "could be considered a severe impairment when she is bothered by it." (Tr. 73.) However, he believed that it was not a severe impairment because "with treatment [it] seems to be controlled…the dermatology notes indicate that…it's not a persistent issue but it periodically comes about and it is successfully treated with the medications." (Tr. 75.) He further testified that Nevills might experience "some limitations with her hands and feet" and also "might be limited"

6

in putting her hands in liquids, but only when she is experiencing a flare-up or outbreak. Otherwise, she would not require any work-related limitations. (Tr. 75-76.) In response to questioning from Nevills's attorney, Dr. Gaeta said he could not determine, based on the record before him, how frequently Nevills experiences flare-ups. (Tr. 77.) He referenced one flare-up in the record that lasted for approximately one month and opined "it's possible" Nevills would have to miss work during such a period. (Tr. 79.)

     Nevills testified about her daily activities and how her pain affects her life. Her husband and teenage daughter do most of the chores around the house, although Nevills occasionally folds laundry and does dishes. (Tr. 86, 97-99.) She drives occasionally, "maybe two [or] three times a month" to go to doctors' appointments and the grocery store. (Tr. 85-86, 100.) She estimated she can only carry about 10 pounds and cannot walk a full block. (Tr. 99-100.) She regularly experiences pain in her ankles, back, arms, and thighs and can "hardly walk some days" due to blisters. (Tr. 90.) She rated her average pain level on a given day as a 5 or 6 out of 10; however, when she experiences a flare-up, the pain is a 10 out of 10. (Tr. 90, 93.) The pain is somewhat controlled with ice and a steroid prescribed by her dermatologist; however, the medicine stopped working after about a month of use. (Tr. 92, 94.)

Nevills also answered questions about her work history. She was most recently employed as an assistant manager in home health care. (Tr. 87.) Before that, she did factory work. (Tr. 89.)

A vocational expert testified that an individual with Nevills's age, education, and work history, who can perform work at all exertional levels and can frequently bilaterally operate foot controls, frequently bilaterally handle, and occasionally put her hands in liquids could perform all of Nevills's past work. (Tr. 106-07.) The ALJ asked whether an individual who could only occasionally bilaterally operate foot controls and occasionally bilaterally handle could perform the same kind of work. The vocational expert opined that such an individual could not perform any of Nevills's past work or any other work that exists in substantial numbers in the national economy. (Tr. 107.)

Upon remand from the Appeals Council, Nevills appeared before the ALJ for a second hearing on July 27, 2020. She reiterated much of her prior testimony, explaining her symptoms and rating the pain worst (an 8 out of 10) in her hands. (Tr. 46-47.) When asked how often she experiences flare-ups, she stated that "one or another part of [her] body is continuously broke[n] out." (Tr. 57.) She explained that the longest flare-up she had ever had on her legs lasted "a couple months" and that the flare-up on her hands "never goes away." (Tr. 58.)

The ALJ then heard testimony from a different vocational expert, who testified that an individual of Nevills's age, education, and work history who can perform work at all exertional levels but can never be exposed to extreme heat; can only occasionally put her hands in liquids; and can only occasionally operate foot controls and handle could perform work that exists in significant numbers in the national economy. She listed three occupations that comport with these limitations: furniture rental consultant, usher, and bus monitor. (Tr. 64.) She listed the same three occupations when the ALJ changed the hypothetical to light work requiring simple routine tasks and simple work-related decisions. (Tr. 65.) When the ALJ added one final restriction—absence from work four days each month—the vocational expert testified that no work fit the criteria.

## ALJ DECISION

The ALJ found that Nevills met the insured status requirements of the Social Security Act through December 31, 2022 and had not engaged in substantial gainful activity since September 12, 2017, her alleged onset date of disability. (Tr. 11.) The ALJ then determined that while Nevills suffers from allergic contact dermatitis, this impairment does not meet or medically equal the severity of one of or a combination of the listed impairments in 20 C.F.R. § 404. (Tr. 11-13.)

Based on her consideration of the record, the ALJ found that Nevills had an RFC to perform a full range of work at all exertional levels but with certain

limitations.  She can never be in extreme heat; can only occasionally put her hands in liquids; can only occasionally operate foot controls with her feet; and can only occasionally handle items with her hands.  (Tr. 13.)  Based on Nevills's RFC, the ALJ found that she could not perform her past relevant work as a home health aide, administrative clerk, and hand packager.  (Tr. 25.)  However, she found that she could perform other jobs that exist in significant numbers in the national economy, including furniture rental consultant, usher, and bus monitor.  (Tr. 24.)  Accordingly, the ALJ denied Nevills's applications.

## ANALYSIS

I.     The ALJ did not err in her consideration of the opinion evidence.

Under the new regulations for evaluation of medical evidence, which apply to applications filed after March 27, 2017, ALJs are no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 404.1520c(a), 416.920c(a).  Instead, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors, the most important of which are supportability and consistency.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  An ALJ need only discuss other factors if "two or more medical opinions…about the same issue are both equally well-supported and consistent with

the record but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3).

Nevills argues that the ALJ improperly analyzed Dr. Gaeta's opinion, discussed above. In her decision, the ALJ described Dr. Gaeta's opinion as follows:

> At the first hearing, a medical expert, Dr. Gaeta, testified…that [Nevills] suffered from dermatitis but that it did not equal Listing 8.05. That listing required extensive skin lesions persisting for at least three months despite continuing treatment as described. Dr. Gaeta testified that the dermatitis was limited to her hands and feet and was treatable with medication. However, he noted that with flare-ups, she was limited to occasional use of her feet for foot press and could not submerge her hands in liquids and would be limited to occasional handling. He testified that, during a flare-up, she would have trouble using her hands on a full time basis but acknowledged that it would not preclude using her hands for work activities. In looking at treatment notes, Dr. Gaeta noted that flare-ups had lasted a month so it would be possible that she would miss days from work. **The undersigned finds this is very persuasive** [emphasis added]. Dr. Gaeta's findings relating to the claimant's physical impairments are consistent with the record as a whole and support the findings set forth above. Further, the doctor had an opportunity to review all of the medical evidence in the record and he is a qualified board certified physician and expert in evaluating medical issues in Social Security disability claims.

(Tr. 23.)

Nevills believes that the ALJ erred by deeming Dr. Gaeta's opinion persuasive but failing to incorporate his statement that she might have to miss work in her RFC. In response, the Commissioner argues that Dr. Gaeta's "vague" statement regarding the possibility of missing work is mere speculation that does not constitute a medical opinion under the regulations. The Commissioner further

11

contends that even if the statement could be considered a medical opinion, the ALJ did not err in failing to discuss it in her RFC evaluation.

The fact that the ALJ found Dr. Gaeta's opinion overall "very persuasive" does not mean that she was required to adopt every one of his findings when formulating Nevills's RFC. It is the ALJ's duty to formulate a claimant's RFC and in so doing, she is "not required to rely entirely on a particular physician's opinion." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (citation and quotation marks omitted). See also Wilkinson v. Comm. of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."). As the Commissioner points out, Dr. Gaeta did not estimate how many days of work Nevills might have to miss per month. Rather, in response to questioning, he simply stated that "it's possible" she would have to miss work during a flare-up. (Tr. 79.) Furthermore, he could not estimate, based on his review of Nevills's medical records, how often flare-ups might occur. (Tr. 77.)

Additionally, as the Commissioner notes, the ALJ explicitly discounted a separate missed work limitation contained in Dr. Patrick Smith's January 29, 2018 medical opinion. (Tr. 22, 427-30.) In that opinion, Dr. Smith, Nevills's primary care provider, indicated that he had treated her for eczema, depression, and arthritis.

12

He concluded, without explaining which diagnosis(es) would cause work limitations and how or why, that Nevills's symptoms caused a marked impairment in her ability to perform activities of daily living and that she would be absent from work at least four times per month. (Tr. 429.) The ALJ explained why she found this opinion unpersuasive, writing that it was not consistent with the record as a whole, "cited extreme restrictions in checkmark fashion which are not supported by [Dr. Smith's] own treatment records," and "was completed in January 2018 and was not consistent with the more current treatment notes." (Tr. 22.)

The record as a whole supports the ALJ's analysis of both opinions and her ultimate RFC determination. Nevills has certainly experienced problems with her skin, at various points reporting painful flare-ups involving redness, itching, and blistering. (Tr. 438, 440, 448, 722, 783.) However, as the ALJ observed, the record contradicts her claim of constant flare-ups. (Tr. 14, 57-58.) She did not have rashes or unusual skin lesions at appointments on July 24, 2018, April 18, 2019, March 16, 2019, and February 13, 2020. (Tr. 612, 704, 812, 1045.) She was hospitalized for reasons unrelated to her skin condition between April 30 and May 4, 2020 and did not have any rashes during that period. (Tr. 911, 1026.) On May 11, 2020, the date of her last primary care appointment in the record, Dr. Smith noted that she did not have any rashes or lesions. (Tr. 1064-65.) Dr. Muhammad Mirza likewise did not observe rashes during a follow-up oncology appointment that month. (Tr. 1106.)

13

The record also contains some evidence demonstrating that Nevills experienced improvement in her symptoms with certain medications. For example, in April 2019, her dermatologist, Dr. Mallory Abate, observed that her condition was "significantly improved" due to the methotrexate she had started the month before. (Tr. 768-69.) At a follow-up appointment in July, however, Nevills reported that the medication was giving her headaches and was advised to stop taking it.[3] (Tr. 783.) Later that month, at an appointment with Dr. Smith, she was reportedly "doing well" using Kenalog ointment and doxycycline and did not need to follow up with the dermatologist for another 6 months. (Tr. 815.)

Finally, at her second hearing, Nevills testified that she saw her primary care physician most regularly for treatment of her skin and had not visited the dermatologist since February 2020.[4] (Tr. 48.) Her pursuit of generally conservative treatment is a factor that the ALJ properly considered, and one that undercuts her claims of debilitating pain. See Lawrence v. Saul, 970 F.3d 989, 996 (8th Cir. 2020) (ALJ's conclusions as to the severity of pain and limitations were consistent with the fact that claimant was prescribed generally conservative treatment).

---

[3] At this appointment, Nevills was instructed to start bleach baths to avoid possible secondary staph infection of the skin. (Tr. 783.) At the second hearing, she testified that she stopped taking these baths because they did not help. (Tr. 58.)

[4] It appears that this visit took place at the end of January. (Tr. 890-903.) Nevills testified that she was supposed to see Dr. Abate again in April 2020, but the doctor canceled the appointment and Nevills had not rescheduled it. (Tr. 48.)

Furthermore, when she did visit Dr. Abate, treatment notes indicate that Nevills' skin condition is not as severe as she contends.[5] In fact, Dr. Abate twice opined that her rash would not prevent her from working. (Tr. 648, 710.) Disability is a decision reserved to the Commissioner, which the ALJ emphasized in both of her decisions.[6] However, Dr. Abate's treatment notes, along with the rest of the record, suggest that Nevills's skin condition is not debilitating and support the ALJ's RFC determination.

The ALJ discussed this evidence in her decision. She accounted for Nevills's flare-ups by imposing restrictions prohibiting her exposure to heat, limiting her exposure to liquids, and limiting her handling of items with her hands and feet. (Tr. 13.) These limitations are consistent with the evidence in the record. It is ultimately the claimant's burden to establish her RFC, and Nevills failed to carry this burden by producing evidence that her RFC should be more limited. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

---

[5] In notes from a February 14, 2019 appointment, Dr. Abate observed that Nevills had "erythema and liner erosions and lichenified papules, [and] geometric erosions, all in reachable areas only of the hands, back, and lower legs" and that "unreachable areas [were] unaffected." (Tr. 735.) She opined that "most of what I see today is psychogenic" and that Nevills's rash was caused by her scratching herself. (Tr. 735.) After discussion, Nevills apparently agreed to see a counselor or psychiatrist. Although Nevills discussed antidepressants at subsequent appointments with Dr. Smith, it is unclear if she ever spoke about her skin issues with a mental health professional.

[6] In her initial decision, the ALJ concluded, without explaining why, that she did not find Dr. Abate's opinion persuasive and that disability is an issue reserved to the Commissioner. (Tr. 142.) In her second decision, she found the opinion persuasive and explained, while acknowledging that disability is ultimately a legal conclusion, that Nevills did not appear to be "following up regularly" with Dr. Abate and that her treatment notes "did not support such extreme limitations as noted by Dr. Smith." (Tr. 22-23.)

Although Nevills believes that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not my role to reweigh the evidence considered by the ALJ in her determination of a claimant's RFC. Id. at 934. Here, the ALJ did not substantially err when she concluded, based on the evidence in the record, that Nevills had the RFC to perform a full range of work at all exertional levels with certain limitations.

The written decision demonstrates that the ALJ evaluated all of the medical evidence of record and adequately explained her reasons for the weight given this evidence in a manner consistent with the regulations. Substantial evidence in the record as a whole supports the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." Fentress v. Berryhill, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008)).

Accordingly,

**IT IS HEREBY ORDERED that** the decision of the Commissioner is affirmed, and Linda Nevills's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

                                                   RODNEY W. SIPPEL
                                                   UNITED STATES DISTRICT JUDGE

Dated this __16th__ day of June, 2022.